359 A.2d 724

COMMONWEALTH of Pennsylvania, PENNSYLVANIA
HUMAN RELATIONS COMMISSION,
Appellant,

v.

FREEPORT AREA SCHOOL DISTRICT.

Supreme Court of Pennsylvania.

Argued March 9, 1976.

Decided July 6, 1976.

Sanford Kahn, Pa. Human Relations Commission, Harrisburg, for appellant.

Harry K. McNamee, Marshall, McNamee, MacFarlane & Vierthaler, Butler, for appellee.

Before JONES, C. J. and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This case concerns the scope of relief which the Pennsylvania Human Relations Commission (PHRC) may order when a respondent is shown to have engaged in a

discriminatory practice following a complaint filed with PHRC by an individual. The Freeport Area School District (Freeport) argues that PHRC may order affirmative relief only for the named complainant. PHRC claims that it may order such relief for all victims of a discriminatory practice.

On December 19, 1972, Linda Szul filed a complaint with PHRC [1] alleging that Freeport's maternity leave policy unlawfully discriminated against her on the basis of sex.[2] The complaint was amended on January 11, 1973, for the sole purpose of alleging that the discriminatory maternity leave policy had injured other similarly situated female employees of Freeport. PHRC investigated the complaint and found that there was cause to believe it to be valid. Following the statutorily mandated attempt to conciliate the complaint,[3] a public hearing was begun on April 19, 1973. Complainant Szul and three other female employees of Freeport testified at the hearing. Following the hearing, PHRC issued findings of fact, conclusions of law and a final order directing Freeport, inter alia, both to abandon the discriminatory maternity leave policy and to pay Szul and the two similarly situated teachers who had testified at the hearing the prenatal pay and other benefits they would have received had they not been subject to the unlawful maternity leave policy.[4]

1. Complaints may be filed with PHRC by aggrieved individuals or by the Attorney General, or PHRC may itself initiate a complaint. Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, § 9, as amended, 43 P.S. § 959 (Supp.1975).

2. The complaint alleged that Freeport discriminated against women by requiring them, when pregnant, to terminate their employment three and one-half months before their "due" dates, regardless of their ability to continue working.

3. Pennsylvania Human Relations Act, Act of October 27, 1955, P. L. 744, § 9, as amended, 43 P.S. § 959 (Supp.1975).

4. PHRC ordered Freeport to pay complainant Szul $1,337.19 in backpay, representing the amount she would have earned had she been permitted to work until it was medically necessary for her to stop, plus $1,014.42, representing her accumulated sick days.

Freeport appealed the final order to the Commonwealth Court,[5] arguing, inter alia, that PHRC had no authority to order affirmative relief for any but named complainants. The Commonwealth Court agreed, stating that the only connection the additional victims of Freeport's discrimination had with the case "was as subpoenaed witnesses and recipients of the Commission's unauthorized largesse and all-protective care." It held that granting affirmative relief to victims of Freeport's discriminatory policy who were not specifically named in the complaint denied Freeport due process of law.[6]

■■ PHRC filed a petition for leave to appeal to this Court which we granted.[7] Freeport asks us to quash the appeal, contending that PHRC has no standing to appeal the Commonwealth Court's order. PHRC asks us to reverse that portion of the Commonwealth Court's order which held that PHRC may order affirmative relief only for named complainants. We deny Freeport's

Harrison was to be paid $1,739.41 in backpay and $168.33 in sickpay. Ippolito was to be paid $2,310.88 in backpay. Thompson, who was forced to leave before the formal maternity leave policy went into effect, and who was, therefore not similarly situated, was to receive $9,774.00 as compensation for Freeport's failure to reinstate her promptly.

All four were to receive a lump sum payment for loss of benefits caused by the compulsory termination.

Finally, Freeport was directed to change its maternity leave policy to conform to present law and was to notify all present and incoming teachers of the changed policy.

5. The Commonwealth Court heard the case under authority of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, art. IV, § 403, 17 P.S. § 211.403 (Supp.1975).

6. The Commonwealth Court set aside all affirmative relief for Thompson, Ippolito and Harrison and further set aside the award of sickpay to Szul. The only issue briefed and argued before this Court is the propriety of affirmative relief for Ippolito and Harrison. We therefore do not address any issues concerning the Commonwealth Court's denial of relief to Thompson or denial of sickpay to Szul and Harrison.

7. See Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204, 17 P.S. § 211.204 (Supp.1975).

motion to quash,[8] modify the order of the Commonwealth Court as PHRC requests, and affirm the order as modified.

We have recently discussed what the Legislature intended to be the scope of relief which PHRC may order. In *Pennsylvania Human Relations Commission v. Alto-Reste Park Cemetery Association,* 453 Pa. 124, 133–34, 306 A.2d 881, 887 (1973), we said:

"From the outset, we note that the Legislature, in an attempt to deal comprehensively with the basic and fundamental problem of discrimination, clothed the Human Relations Commission with authority to ' . . . *take such affirmative action* including but not limited to . . . [several specific courses of action] *as, in the judgment of the Commission, will effectuate the purposes of this act. . . . '* Pennsylvania Human Relations Act, [Act of October 27, 1955, P.L. 744,] § 9, 43 P.S. § 959 (Supp.1973). (Emphasis added.) The words 'as in the judgment of the Commission' indicate to us that the Legislature recognized that only an administrative agency with broad remedial powers, exercising particular expertise, could cope effectively with the pervasive problem of unlawful discrimination. Accordingly, the Legislature vested in the Commission, quite properly, maximum flexibility

8. Freeport responded to the petition for allowance of appeal filed by PHRC by filing a motion to dismiss the appeal. The motion to dismiss, which urged that PHRC had no standing to appeal the Commonwealth Court's order, was denied by this Court per curiam. The motion to quash the appeal presently before the Court contains the identical allegation. Our decision to deny Freeport's motion to dismiss was in accord with well established law that PHRC does have standing to appeal the order of the Commonwealth Court and is res judicata with respect to the present motion. We, therefore, deny the motion to quash the appeal. See *Pennsylvania Human Relations Commission v. Alto-Reste Park Cemetery Association,* 453 Pa. 124, 306 A.2d 881 (1973) (PHRC appealed order of the Commonwealth Court to this Court); *Pennsylvania Human Relations Commission v. Chester School District,* 427 Pa. 157, 233 A.2d 290 (1967) (PHRC appealed order of the Court of Common Pleas of Dauphin County, sitting as Commonwealth Court, to this Court).

to remedy and hopefully eradicate the 'evils' of discrimination. Pennsylvania Human Relations Act, supra at § 2(a), 43 P.S. § 952(a) (Supp.1973). The legislative mandate that the provisions of the Act be 'construed liberally,' noted supra, serves to reinforce this view."

In this case there is no question concerning the remedy itself; rather the issue is raised whether PHRC may order affirmative relief for persons who were not specifically named in the original complaint. Freeport argues that, when the original complaint is filed by an individual, PHRC may order such relief only for the individual or individuals named in the complaint. A brief review of the statutorily mandated procedure for PHRC handling of complaints disposes of this contention.

The Pennsylvania Human Relations Act contemplates an invarying three step procedure for handling complaints, regardless of source. A complaint may be filed by an individual, by the Attorney General or initiated by PHRC itself. PHRC must investigate all complaints that are filed. If the investigation reveals that there is probable cause to credit the allegations of the complaint, PHRC must give the respondent an opportunity to respond to those allegations at a preliminary hearing. If, after this opportunity for response has been given, there is still reason to believe that the complaint is valid, PHRC must attempt to conciliate the dispute. If conciliation fails, PHRC must hold a public hearing on the charges. After the public hearing, if the complaint is sustained, the Commission issues findings of fact and a final order "requiring such respondent to cease and desist from such unlawful discriminatory practice and to take such affirmative action including but not limited to hiring, reinstatement or upgrading of employes, with or without backpay. . . ." Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, § 9, as amended, 43 P.S. § 959 (Supp.1975).

Thus it can be seen that the Act mandates that every complaint, regardless of source, must be investigated, if thought to be valid, must be the subject of an attempt by PHRC to conciliate the dispute, and, if conciliation fails, must be the subject of public hearings and formal findings and orders by the Commission. Once the complaint is filed the procedure is uniform. Nothing in the Act limits PHRC's power to investigate, conciliate or adjudicate depending upon the source of the complaint. Nothing in the Act limits the remedy which PHRC may order depending upon the source of the complaint.

Moreover, relief, when granted, is class relief. The respondent is ordered to cease and desist from the unlawful discriminatory practice with regard to all persons in the affected class. The act draws no distinction between the scope of "injunctive" relief and the scope of affirmative relief. Affirmative relief may be ordered "as, in the judgment of the Commission will effectuate the purpose of [the] act . . . ." [9]

The Commonwealth Court found that Freeport was denied due process of law by PHRC's order granting backpay and other benefits to persons who were not specifically named in the complaint. Although PHRC, under the Act, has the power to order such relief, a failure to inform a respondent concerning the scope of investigation and possible relief might vitiate an otherwise lawful exercise of PHRC's authority. Cf. *Commonwealth v. United States Steel Corp.*, 10 Pa.Cmwlth. 408, 311 A.2d 170 (1973). In this case, however, Freeport had ample notice not only that the investigation was to go beyond its discrimination against the named complainant, but itself supplied the names of persons who had been affected by the policy which was alleged to be discriminatory. As

9. We are not presented with, and therefore do not decide whether the phrase "as, in the judgment of the Commission will effectuate the purposes of [the] act" is also applicable to PHRC's authority to order injunctive relief.

Judge Rogers said in his concurring and dissenting opinion:

"[Freeport] objects that it had no notice of the inclusion in the case of employes other than [complainant] until their testimony at the hearing and that it was thus prejudiced in the presentation of its defense. Clearly, due process requires that employers have reasonable notice of the nature and extent of the charges against them, including in this kind of case, the identities of persons, not complainants, who may be included as objects of relief in the Commission's order. However, I learn from the record that the school district here received ample notice that others than [complainant] were involved by (a) her complaint so alleging, which averment it denied, and (b) the fact that the respondent was requested to and did supply to Commission investigators prior to hearing the names and other facts concerning the cases of [the two other persons who were awarded backpay by the Commission]."

We therefore hold that PHRC may order affirmative relief for persons other than the named complaint when (1) the complainant alleges that such other persons have been affected by the alleged discriminatory practice and (2) such other persons entitled to relief may be described with specificity.[10] The result we reach is in accord with federal practice. In *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370 n. 8, 45 L.Ed.2d 280 (1975), the United States Supreme Court said:

"The petitioners also contend that no backpay can be awarded to those unnamed parties in the plaintiff class who have not themselves filed charges with the EEOC. We reject this contention. The courts of appeals that have confronted the issue are unanimous in

10. This requirement may be satisfied, as in the present case, by respondent's supplying to PHRC, upon request, the names of those affected by the alleged discriminatory action.

recognizing that backpay may be awarded on a class basis under Title VII without exhaustion of administrative procedures by the class members."

As a consequence, the order of the Commonwealth Court is modified to reinstate the Commission's award of backpay and other benefits to Harrison and Ippolito.

Order, as modified, affirmed.